May it please the Court, I'm Robert Dalby, appearing for the appellants William L. Berg and Berg Injury Lawyers. Thank you. Let me ask our clerk if she wouldn't mind. You're going to split the time 50-50? Yes, we are. Seven and a half minutes. Would you put seven minutes and 30 seconds on the clock, please? Your Honor, it's our position as we try to... Hang on a second, we're still playing with the electronics here. That shows a minute and 13. I guess your time is up. Thank you very much, Mr. Dalby. It's been wonderful. There you go. Okay. It says seven minutes, but we really are going to count that as seven minutes and 30 seconds. So we're just having no problem. We'll just... That's fine. Okay. You're up. It's the appellant's position that this case is controlled and disposed of by Gentner, which we cited at length in our brief. The attorney for the ERISA beneficiary is not liable for disbursing funds to his or her client unless they entered into the agreement to reimburse. In this case, we did not, and Gentner remains good law. It has not been overruled or modified within the Ninth Circuit, and nothing in Sereboff changes Gentner. In fact, Sereboff expressly says that the ERISA plan may follow the money into the hands of the beneficiary, as the beneficiary is the contracting party who has given the equitable lien by agreement. The attorney is not liable under Gentner or Sereboff. The fact that Sereboff speaks in terms of equity I don't think is a significant difference because the ERISA reimbursement was always premised on equitable relief, appropriate equitable relief. That was true under Gentner, and that's still true under Sereboff.   It's not liable under Sereboff. What Gentner did cite at great length, as did Chapman v. Klimek and Southern Counsel, was that there is serious potential for conflict of interest if the attorney is charged with protecting the ERISA plan and representing his client. The attorney can't serve the two masters, and if he does that, then he's breaching his ethical duties to his client. What happens with a, forget ERISA for a second, just a medical lien? How does that work in California if a lawyer settles a personal injury case or is handling a personal injury case, has noticed that a hospital is claiming a lien? How does that work? Assuming it's a valid protected lien, the attorney will pay it with the consent of his client. He cannot just unilaterally pay it if his client objects to it or has questions about it. What happens if the client objects? Then the attorney holds the money generally until the dispute is resolved.  Well, that's, I mean, ERISA is a very specific statutory formula, and Congress has made it real clear that equitable relief is the sole recourse. And obviously there have been a long line of cases such as Knudson and some of the other ones that have come down, Sereboff being the latest one. But under its express terms, still, Sereboff says that the contracting party is the person who is liable for the lien. He is the one who entered into the agreement. He gave the lien on the property that he took title to or takes title to. That is his share of the settlement. I've been just thinking as we're getting ready for this case, I can't think of any other area of the law where someone who has knowledge of a lien doesn't take subject to the lien. It's, well, it's under state law, which I'm most familiar with. There are different types of liens. There are people who claim liens. The attorney is not necessarily obligated to recognize or honor those. In some situations, they have to be perfected. Again, it is always subject to the client's oversight, the client's ultimate authority. The attorney can't just unilaterally honor the lien. He needs the authority of the client, or if he disperses the money, he does so at risk of being sued by the client. Yeah, but it doesn't – doesn't the attorney take the funds that he settled the case with, if he has knowledge that those funds are subject to a lien, doesn't he hold them subject to that knowledge? In general, he does, and he will consult with his client. He will ask his client how he wishes to proceed. He will ask his client if he has a dispute. Well, the client is not the one that has the lien. The client is the one who's imposed – who the lien is imposed on. And the attorney is merely an agent for the client. So to that extent, the attorney is as agent for the client in no different shoes than the client himself is in and subject to the same lien. What's wrong with that thinking? Well, the attorney must – must obtain authority from the client before he can disperse those funds. Well, that's not quite what I'm asking. The client cannot disperse those funds except without first honoring the lien of the plan, correct? The attorney or the client? The client. The client cannot disperse those funds which have been settled for whatever except as required by the lien, correct? Well, that's subject to whatever equitable defenses that the client might be able to raise. I mean, there are cases all over the place where common fund is sometimes – sometimes allowed. This is not a common fund. This is a settlement which there is imposed by ERISA a lien on, correct? Yes. All right. And the client, except for if there's some third type of problem involved, has to honor that lien, correct? Well, he honors it – he has to honor it subject, again, to defenses that he can raise. All right. We'll get to the defenses. But the client – it's imposed on the client. The client must honor it subject to whatever other things the client can come up with. And the attorney – what I'm getting to here is the attorney stands in no better position, stands, insofar as the settlement is concerned, in the shoes of the client, because the attorney is not a separate person. The client is an agent of the attorney. Well, I mean, the attorney is the agent of the client. Excuse me. So the rights of the attorney cannot really rise any higher than the client, correct? Well, no. I would disagree. As to the attorney's fee – Well, that's another question. For costs and attorney – yeah, that is, in our view, all things being equal. Why? Why should the attorney have a greater use of those funds than the client himself could have? Well, equity gives the attorney a first lien because he is the one who invests the time, the money, takes the risks, and obtains the funds. He did that subject to knowledge that the funds were imposed with a lien if he received any recovery. In this case, yes, we were aware of the ERISA reimbursement, right? Well, he did his work subject to the lien. That's like real estate law. You buy or sell something, you know it's subject to a lien. That's it. Well, I differ because we did not expressly accept the lien. We did not sign the contract. It's imposed by ERISA. It's imposed by law. Well, I would argue it's imposed on the contracting party, the beneficiary, not on the attorney. Well, I look at the attorney as – you and I are looking at the attorney differently. The attorney is, to me, is – and I don't think you can get away from this – nothing but an agent of the client. Well, not in all things. Obviously, we're subject to independent ethical rules and the law. We can't strike out. Insofar as his fund is concerned. Look, the client hired the attorney, correct? Yes. And can discharge the attorney. Yes. That makes the client have an attorney who's at will.  Okay. I guess you're seven and a half minutes over. Thank you. We'll hear from the amicus. Are we going to hear from you? Okay. Thank you. May it please the Court. Don DeCamera, appearing for the Amicus Consumer Attorneys of California. I'd like to thank the Court for the opportunity to participate in this oral argument. This issue is very important to all of our members. It's equally important to the plaintiff's bar throughout all of the States within the Ninth Circuit. And most importantly, it's critical to our citizens in the States within the Ninth Circuit who have been injured by the negligence of a third party and need to be able to retain counsel, independent counsel, to represent their interests where their medical bills were paid by ERISA plans. The clear majority rule here, as established in Gettner by this Court and Chapman v. Klemek and Southern Ford v. Counsel, and there's another case, Levitt, out of the Fourth Circuit saying the Fourth Circuit would follow this exactly same rule, is that you cannot impose any duty on the attorney because it would constitute an illegal conflict of interest in violation of State ethical rules. That's the law. That's established. That's what the lower court – that's the problem with a lower court's decision. What's the conflict? I'm not clear on what conflict you're referring to. The conflict of interest imposed by the attorney who can no longer zealously represent only the interest of the client who retained him, but must also represent the interest of the ERISA plan, which is in direct conflict. Well, don't you also – Any different from a regular medical lien? I respectfully disagree with the answer given by my co-counsel, Mr. Dalby. Hospital lien is not imposed under California law on the plaintiff's attorney. Not at all. In fact, the dividing line between when it is effective is when the attorney, the plaintiff's attorney, gets those funds. If it has not been properly served by that point in time, it is invalid. Let me tell you how it is in Arizona. I don't know how it works here, but in Arizona, if a hospital has a lien, they record something. Correct. And that puts the world on notice that there's a lien. Correct. Here, they have to serve it by certified mail on the tortfeasor and his carrier, if known. If they have not done that, by such time as the attorney receives any monies in the case, the lien is invalid. And the plaintiff's attorney can disperse. If they do what they have to do before the lawyer gets the money, the lawyer has to honor the lien? No. The lawyer, the plaintiff's lawyer never has to honor the lien, but it ties up the funds at the tortfeasor's attorney, at the insurance company level. Those are the only people liable under the California Hospital Lien Act, the insurance company and its agents, for not honoring the hospital lien. Not the plaintiff's attorney and not the plaintiff. It must come directly from the client. The attorney gets his fees regardless of the dispute between the client and the hospital. That's correct. That's correct. There's no common fund provision, but that is correct. In a related case, in a Federal Medicaid lien through the state Medi-Cal program, it was held in Bryan v. Christensen that the attorney was not liable for the client's Medi-Cal lien. Unless there is a statutory lien placing the burden of payment and honoring the lien on the plaintiff's attorney, the plaintiff's attorney has no duty to honor that lien in this context. And that's made clear in the Gettner decision. And the Berg firm was reasonable in relying upon Gettner as established precedent. Just to remind me, Gettner is not an ERISA case, though, is it? Yes. It wasn't an ERISA case? Yes. Gettner v. Hotel Employees Income and Benefit Association Plan, something of that nature. No. It wasn't really the same as this case. I don't think. It was a little – there was a – It was slightly different in that the argument being made was – and the way the lower court distinguished it was it was based on the fact that the argument was the attorney had a fiduciary duty. But that's a distinction without a difference because as soon as you place a constructive trust on the attorney, he's also got the concurrent fiduciary duty. So you can't distinguish it on that basis. So these are the controlling cases, Gettner, Chapman v. Klemek, and they indicate quite clearly, it's established Ninth Circuit precedent, that this will be an illegal conflict of interest placed on the plaintiff's attorney, given that, and that it would interfere with the State's regulation of the conduct of attorneys. Well, I'd just like to back up to Judge Silverman's original question to you. I don't think it – you might have answered it, but it probably went over my head. The – what would be the difference in a conflict of interest if it's a State medical lien or any other type of lien imposed on the funds of a settlement? If it is a statutory lien, then the legislature will, in passing that statute, determine who is liable for it, balance the various interests, and come to a conclusion and draft the statute accordingly. For instance, a Medicare lien is clearly enforceable against everybody. And if the statute does that, and if it does not violate any constitutional issues, then it would be valid. This is not the case. You have repeatedly indicated that ERISA imposes this lien. But we respectfully disagree. ERISA says nothing about liens, subrogation. It does not authorize liens or subrogation. It does not prioritize liens. It says nothing whatsoever about it. In 1974, when ERISA was passed, subrogation and reimbursement did not exist in the health insurance industry. It allowed the plans to have this type of provision, though. I'm sorry? The plans are allowed to have this type of provision. The plans can put whatever they want in their contractual document. And so that is within ERISA's reach, so to speak. That's what the courts have interpreted it to be. But they can only seek appropriate equitable relief. And you have to question, since the only relief available to them is equitable, and they have stripped all equitable defenses in the instant plan and in most of these self-funded plans, such as the common fund doctrine, the make-whole doctrine, equitable apportionment. We submit they cannot show that that is then appropriate equitable relief, even against their own plan member, because it violates the fundamental underlying principle of all equity, which is he who seeks equity must do equity. And Professor Pomeroy defines that as allowing for all of your adversary's claims and defenses, equitable claims and defenses. Suppose a plan says we don't like the amount that the attorney – the attorney takes a 50 percent fee, and the plan says, look, you should have taken 20 percent or 33 and a third. In other words, aren't the plans being held captive to the attorney's funds in the attorney's hands when – when – if we adopt your theory? No, not at all. Well, the attorney can just take whatever fee the client and the attorney agree to, even though the plan says the fee is excessive. Well, again, that's regulated by the State Bar and the California Supreme Court. You cannot charge an unconscionable fee. Here, the fee is one-third. Now, no attorney, no self-respecting attorney is going to jury-rig the fee to try to beat out an Arisalene, and that's not what happened here. This is a standard one-third contingency. There is no duty. And the problem is it implicates the Tenth Amendment. The way – the impact of the lower court's decision is unconstitutional because it would purport to interfere with the State's regulation of its attorneys and State court issues. And the Ninth Circuit has clearly held in Wharton v. Calderon that this is intolerable. It is not within the charter of the Federal courts to do so, and therefore it must be stopped. And public policy would also dictate that no one would be able to find counsel if this stands. Let me ask just one question here. Sure. If the attorney made a recovery that was sufficient to pay his fee and there was a balance left over and he distributed that balance to the client and he kept his fee, then the insurance company would look to the client to enforce its rights to receive the recovery to which it's entitled, is that right? Correct. Sure. Now, the only time we get into trouble is if the amount distributed to the client is not enough to satisfy the lien of the insurance company. Correct. Then if the lawyer pays himself from those funds, honors his fee, he's treating his lien as superior to the insurance company's lien. Correct. Correct. And you're saying that's perfectly proper. That is not only perfectly proper, that is the law in California, that the attorney's fee is prior in time, prior in right, Civil Code 2897, the Gentner case, the Chapman v. Clement case on ERISA. The Berg firm was understandably and justifiably able to rely on that precedent in California law. And even in Gentner, the court went back and said ERISA is silent on all of these issues and therefore we should look to state law and cited a very wide body of state law saying the plans cannot get subrogation against the plaintiff's attorney unless he has contractually agreed to it. So what you're saying. You'd have a conflict. Yeah. We've got a contest between liens here. And you're saying the lawyer's lien has priority unless he has agreed to the contract. Correct. And there's a California case, recent California case on point which we cited, Gilman v. Darby, which says you have to make the plaintiff's attorney's fee predominant because he is the one who created the fund. It gets back to the whole equitable basis for the common fund which the Supreme Court has enforced for 150 years. Well, let me just follow up on that. $100,000 came into Berg's possession. Berg's fee was $33,000. Right. The plan wanted $53,000. Right. Both of those could have been satisfied and the client would get whatever's left, roughly $20,000, right? Right. Why shouldn't that have been the way it operated? Well, that plays directly into the fact that there appears to be an issue of fact preventing, precluding the summary judgment from being granted, which is that in the Berg firm's papers, they indicated that they called the plan or the collection agents for the plan and asked, is this an ERISA plan, and was told, no, it is not an ERISA plan. If you determine they were reasonable in relying upon that, and I submit that they were, then that triggers California Civil Code Section 3040, a lien reduction statute, which says the most that can be recovered is one-third of the total settlement. That is $33,333.33. That is exactly the amount that the Berg firm withheld to the penny along with some medical payments paid by the clients. So the chances of that being a random number are 1 in 10 million when you think about it. So there's an issue of fact right there that would require the district court to hear from live witnesses as to whether that testimony was credible and believable. But I submit to you that it is corroborated to the penny by the dollar amount retained, which is the dollar amount required under Civil Code Section 3040. There was no conflict between the liens. They could have paid the lawyer's fee. They could have paid the ERISA lien. But they retained the most that they would be liable for in a non-ERISA plan under any circumstances, one-third of the gross recovery. They did what they tried to do what was right. Thank you very much. Thank you, Your Honor. Okay. For the appellee. May it please the Court, my name is Jim Rushford and I represent the A.C. Houston Employee Benefits Plan. What we get away from when we talk about these cases is what's the policy of ERISA? Why is that there? Why are we dealing with it? Why do we have to deal with it here today?  to create these employee benefit plans. We've just gone through a great debate in this country about health care and making sure people have some kind of health care. So that's where we start with this. That's what this is all about. What ERISA does is provide some tools and then instructs the Court to help refine the tools to help these plans provide this service, this employee benefit stuff, at a reasonable price. One of the things they do is they get money back if the member, the plan member, has a third-party recovery that includes injuries that were medical treatment was provided by the plan. It's that simple. And what happens with this deal is the members, through their representatives, come up and negotiate, I assume, for a plan. Here's the terms of our plan. It's a contract between the member and the plan. The member then, that's what he has. And, as a matter of fact, in our contract, the plan says if the member has a third-party claim that includes reimbursement for benefits he or she received from the plan, he assigns that claim to the plan. It's right in there. It's right in this bill. It's the contract between the beneficiary and the plan. Absolutely. The lawyer is not a party to this contract. The lawyer is not a party to that and shouldn't be. Okay. Gettner says a subrogation agreement or lien can be enforced against the attorney only if the attorney agrees with the client and the creditor to protect the lien. You know, in terms of Gettner and what they were deciding in Gettner, I don't have a problem with that. We're in a different place now. What the Supreme Court said in Sereboff is you can't do a legal action to recover this money. What it is, is this lien that we've been talking about so much here today, this lien is created the minute the fund is created, and that's the minute the guy gets benefits. As soon as the guy gets benefits, if he has a third-party claim, the plan has a lien against his recovery. Against the beneficiary's recovery. Yes, sir. The beneficiary goes to his, and that's what the beneficiary owns. He has the right to get this, to get this health benefit. He gives up some things. I don't think anybody disputes they have a lien against the beneficiary's claim. No. In fact, you got the money back from the beneficiary here. Yes. Okay. Do I understand, and kind of boil your argument down in 25 words or less, Sereboff changes the result in Gettner? Is that what you're saying? It changes the focus. If we were to disagree with that, if we were to say Sereboff decides whatever Sereboff decides, but it doesn't, strictly speaking, overrule Gettner, do you lose? No. Why not? Why doesn't Gettner control then? Because what Sereboff says is there's a different approach to recovering this money. Gettner was talking about and was worried about the lawyer being declared a fiduciary of the plan, and it talked about the lawyer would be in this position where he has to give the plan advice and protect the plan and give the member, his client, advice and protect the member, and they could be at odds. And that's an irreconcilable conflict. Do that as it may. In Sereboff, they're going after the beneficiary. They're not going after the lawyer. Is that right? Say that again, Your Honor. In Sereboff, they were going after the beneficiary. They were not against the lawyer. Chose not to. That's right. We have a case that says you can't go against the lawyer. Now, I'm asking you, if Sereboff just deals with beneficiaries and not lawyers, doesn't Gettner still then control? I'm not saying Gettner doesn't control Gettner's facts. What the difference is here is you've got the lawyer who has money that he knows part of it belongs to the plan, and he gives it away. And as you guys discussed earlier while I was sitting, what the lawyer is supposed to do in those circumstances where there's a lien, he either, number one, when he gets the settlement money, he and his client satisfy the lien. Yeah, but what law says knowledge of a lien that someone else has on funds binds the lawyer, especially since they're saying there's a problem with States' rights and conflicts of interest. How is the lawyer bound by the knowledge that there's a lien for a third party, but the lien does not explicitly or in any implied way name him? He's holding somebody else's money. But is he holding it subject to the lien? That's a $64 question here. And there's nothing that is there – what definitively says money in that attorney's hands is impressed with the lien? What says that or implies it? The contract between the member and the plan. No one doubts that the member is. The member can't bring anything more to the lawyer than he owns. The member doesn't own that part of the money. That's the plan's money. And the Supreme Court says that in Saraboff. The response to that, that the lawyer is – doesn't stand in higher shoes than the beneficiary, their response is there's an ethical override to that under the State law that gives it the – I don't want to use the word priority, but preference or whatever you want to call it. They created the fund in the first place in that under State law, they're entitled to that fee that created the fund. Well, they are entitled to the fee. I don't dispute that. And the problem that Berg ran into in this case is when they got the money, they took their fee, they paid the client some money, but they never settled the lien. And they found themselves short. They found themselves without the 54,000 or whatever it was. They had 30-something. And the lien guy said, no, our lien is for this amount. Where's the rest of the money? Let's assume you're right. Can you get a money judgment against Berg or what do you get? Do you get an equitable relief of some sort? Yeah. They're holding that money in trust for us because they gave the rest of it away. Well, they don't have it anymore. He says, as I understand it, the money went from the trust account into somehow their general account and they've, you know, he bought a boat with it or, you know, whatever he did. Well, it went to their general account. Yeah, but it's not there anymore. He paid, he got a paycheck. Berg got a paycheck. Berg paid his children's tuition with it. Whatever you do with your money. The nice thing about Sereboff says is you don't have to do that strict tracing anymore. So where do they, what do you get if you were to win? You get a judgment. He gave away our money. You get a judgment, a personal judgment? Probably against the firm, yeah. I think so. But you couldn't sue them in law, you can only sue them in equity. No, because they were holding our money and they gave it away. Tell me the difference between a judgment, you would get a money judgment against the firm. That would be something other than a constructive trust. It wouldn't be like a turnover order. It would just be a money judgment against the firm. I think the Court would find that they are holding money in constructive trust or constructive trust or resulting trust. I was looking at Wittgen, that sounds more applicable. But they're holding the money in trust for the lien holder. And I'm saying suppose the money is no longer there. They've already dispersed it. Well, how can you tell what dollar is where? I mean, it's in their general account. When it went to their general account, that's the fund where it went. Well, suppose it's zero now in their general account. They're going to have to come up with the money. They gave away our money. So what you're asking for is a regular money judgment, not just an equitable judgment. Resisting on that is I'm trying to think of the implications of a regular money judgment. But they owe the money. Well, that's part of the problem here. Even if you buy all this, all you can get is some kind of equitable, you know, charging order of some sort, I guess. But you can't really get a judgment that's enforceable against them as you would a regular money judgment. Might be. But they had our money. They gave it away. And the right thing to do was, as you guys discussed earlier, was either to pay the lien or if the lien is disputed. I'm not sure if this is an ERISA lien or not. I don't believe you. I do plaintiff's work. I've been grilling a plan recently. Show me your reimbursement order. Show me your plan. Show me that you're entitled to this money. I'm advocating for my client. There's no conflict here. If the plan can show me that they're entitled to it, then I've got to give them the money. You have to just give the money away and then say, oh, gosh, I was wrong. I didn't save enough for you. You're out of luck. What subsidiary court? Do you have to honor the lien before you take your fee? That's a good question. In other words, what if the recovery is smaller than the... The recovery won't cover your fee and the lien. This is not exactly this case, but it speaks to the case. It's an interesting question because what my thinking on that is, is that when you, in plaintiff's work... Well, their position is that their lien is paramount. Now, what is your position here? My position is that before you take a case, you need to do due diligence and make sure there's a possibility of decent recovery. If you have liens out there, you should know about the liens because those are part of the... But their position is open and shut. Their position is they take a case, there's no statutory or other lien directed to them. They know of a lien, but it's not on them. It's on the third party. They created the fund under ethics law and state law. They're entitled to their fee. But what is your position that if the money came into the hands of the attorney, it was insufficient to pay their one-third and the lien? What do they do? Who do they disperse to? Can they disperse to themselves and give the rest of it to the lien, you know, subject to the lien? Or what do they do? If the money comes in and it's not enough to satisfy the lien and their fee... You say the lien is priority. I think, depending upon the language of the plan, the language of this plan is that it doesn't include, you have to reimburse regardless of attorney's fee. Most plans say exactly that. Well, they're starting to change some of them now. Some of them are making an allowance for it. But this plan says we don't pay for attorney's fees. You pay for that, Mr. Member. That's what you're giving up to have this good health insurance. In that instance, I think the attorney's out of luck, just as if he went to trial and lost the case. What do you make of the argument that before they dispersed the money, they called up the plan and said, are you going to risk the plan? And they say they were told no. And that leaves a fact question whether this was even a... It's not a material fact. They had that reimbursement agreement that's part of the record that you have, very detailed. And it reiterates all the terms of the plan, the onerous terms that say, you know, you've got to pay us first. You can't pay your attorney's fees. We get first dollar, absolute first dollar no matter what. At the very least... When did they get that? They got that at the way, way, way, way early in the case when they met with the client. The client had that in his declaration that was part of our motion. He said, you know, I gave them this and the papers I had relating to the client. They don't doubt that they knew that the client had it. He's not saying that's right. They're not doubting that. They knew it was subject to a lien against the client. Yeah. But they also say it wasn't against them. And what you're espousing is contrary to State law, is their argument, and the Code of Professional Responsibility. It's not contrary to the Code of Professional Responsibility at all. It might be contrary to State law, but ERISA has a preemption clause. It preempts State law. This is the Federal Government trying to help employers or employees by encouraging employers to have health and benefit plans. That's the policy. And that overruns some things. The client gives up the chance to have the plan pay attorney's fees on some plans. On our plan, on others, like on other liens that we do all the time on hospital liens and stuff, quite often we'll get a reduction for the attorney's fees or for some amount for going out and collecting the money for them. In this instance, not the attorney. He doesn't need it. The member needs it. The member, that's a deal he made with his plan to get the plan. Okay. I've got a couple more things I want to say if I've got some time. I do not see the conflict. They act like you have loyalty to the plan and loyalty to the client. Wrong. All you're doing for the plan is holding their money. And if there's a conflict about that money, your duty is to either pay it or to resist and say we're not going to do it. We've put it aside. We can fight about it, but we disagree with you. But to just give somebody else's money away is wrong, and it's not a conflict. You're always representing your client. And you don't owe the plan anything except respect for the fact that you're holding their money. And there is a difference between a fiduciary that you repose your trust and confidence in to do the right thing by you like a real estate agent or a bank, and then somebody just happens to be holding somebody's money. And that's what this is. You're just holding someone else's money. The plan is entitled to the money. The client who came to you contracted with the plan for that. The client can't bring you more than he has. That's all he has. So he can't expand that. You could say, well, I've got this deal now that preempts this long-ago contract you had with the plan. That doesn't work. That doesn't make sense. And that's all I really have. Thank you, gentlemen. I think you folks used up your time, so we will call it quits here. The case just argued is submitted. Thank you very much to all sides. We'll stand and recess for the morning.
judges: Thompson, Cowen, Silverman